OPINION
{¶ 1} Defendant-appellant, Deshawn Johnson, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} On May 21, 2003, appellant, Ronald Smith and Tishawanda Tanner were in a car driving around Columbus and smoking marijuana. Tanner was appellant's girlfriend. Between 1 p.m. and 1:30 p.m., they stopped at Demetrius Tatum's house located at 1109 Hildreth Avenue in Columbus, Ohio, to buy marijuana. Appellant got out of the car and went into Tatum's house just as Elizabeth Grimes was leaving. Tatum and Grimes had been talking and watching television in Tatum's house. Grimes walked past appellant when she noticed Tanner sitting in a car parked on the street. Grimes and Tanner were friends. Grimes also saw a man (Smith) in the backseat of the parked car. As Grimes spoke with Tanner, appellant went into Tatum's house. Grimes finished her conversation with Tanner, got into her car and drove away.
 {¶ 3} According to Smith, while he and Tanner were waiting in the car for appellant, he heard four or five gunshots. Appellant then came out of Tatum's house and got into the car. Appellant told Smith that appellant "had to whack a dude" because "the dude was running and he had to bust him up." Smith also saw a chain and watch fall out of appellant's coat pocket. When Smith was dropped off, he asked appellant what had happened. Appellant told him to just watch the news.
 {¶ 4} Shortly after 2 p.m. that same day, Officer Jackson Rennie of the Columbus Police Department was dispatched to 1109 Hildreth Avenue on a call of shots fired inside the residence. Officer Rennie and his partner arrived at the address and found Tatum lying on the floor. He was wearing only boxer shorts and had an apparent gunshot wound in his chest. Tatum was pronounced dead at the scene. Police discovered three spent casings inside Tatum's house.
 {¶ 5} Upon returning to the house after the murder, Damien Sheppard, Tatum's roommate and cousin, noticed that the house was "kind of trashed." He also noticed that a chain and a watch Tatum normally wore were missing.
 {¶ 6} A few days after the shooting, Smith became concerned that he would be implicated in Tatum's murder. Therefore, he contacted Columbus police detectives. Smith told the police about what he had witnessed on the afternoon of May 21, 2003.
 {¶ 7} As a result, appellant was arrested and charged with one count of aggravated murder in violation of R.C. 2903.01 with a death penalty specification pursuant to R.C. 2929.04 and a firearm specification pursuant to R.C. 2941.145. He was also charged with one count of aggravated robbery in violation of R.C.2911.01 with a firearm specification pursuant to R.C. 2941.145, and one count of having a weapon while under disability in violation of R.C. 2923.13. Appellant entered a not guilty plea to the charges and proceeded to a jury trial. The trial court dismissed the weapon under disability count before trial.
 {¶ 8} During the voir dire, the State disclosed for the first time to appellant's counsel the results of ballistics tests conducted by Mark Hardy, the State's ballistics expert. The tests compared markings on the spent casings recovered in the victim's house to markings on a live round the police later found in the vehicle in which appellant was a passenger on the day of Tatum's death. Hardy concluded that at one time the ammunition had been chambered in the same weapon. Appellant's counsel objected to the State's use of these test results, arguing that the State failed to timely produce them. The trial court initially excluded the evidence, concerned that the case had been pending for almost a year and a half and that the trial had already begun. The State asked the trial court to reconsider its decision, advising the trial court that it would dismiss the death penalty specification if the trial court granted a continuance instead of excluding the test results, thereby allowing appellant's counsel additional time to review the test results. Appellant's counsel objected to a continuance and renewed its argument to exclude the test results. The trial court reconsidered and determined that exclusion of the evidence was too severe of a penalty. With that ruling in mind, the parties and the trial court agreed that the State would dismiss the death penalty specification, and that the trial court would continue the case to allow appellant's counsel additional time to assess the test results and to prepare for Hardy's testimony.
 {¶ 9} Ultimately, the trial resumed and at its conclusion the jury found appellant guilty of aggravated murder and aggravated robbery as well as the attendant firearm specifications. The trial court sentenced appellant accordingly. Appellant appeals, assigning the following errors:
[1.] Appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
[2.] Appellant's due process rights under the state and federal constitutions were violated when inadmissible ballistics testimony was presented for the state.
[3.] Appellant's due process rights under the state and federal constitutions were violated when a state's witness was permitted to testify about alleged statements of Appellant where the prejudicial impact of the statement outweighed its probative value.
 {¶ 10} For ease of analysis, we will address appellant's assignments of error out of order. In his second assignment of error, appellant contends the trial court erred by admitting Hardy's expert testimony in violation of Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786. We disagree.
 {¶ 11} Mark Hardy is a criminalist with the Columbus Police Department. A criminalist analyzes and examines physical evidence. Hardy offered expert ballistics testimony during the trial. The admission of expert testimony is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. State v. Williams (1996),74 Ohio St.3d 569, 576. An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Reiner
(2000), 89 Ohio St.3d 342, 356.
 {¶ 12} Evid.R. 702 governs the admissibility of expert testimony. That rule provides:
A witness may testify as an expert if all of the following apply:
(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
(2) The design of the procedure, test, or experiment reliably implements the theory;
(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
 {¶ 13} Appellant does not contest Hardy's qualifications as an expert witness. Appellant also concedes that Hardy's testimony relates to matters beyond the knowledge of a lay person. However, appellant contests the reliability of Hardy's expert opinion. To determine the reliability of expert scientific testimony, a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. Miller v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607, 611, citing Daubert, supra, at 592-593. To make that assessment, several factors are to be considered: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. Id.; see, alsoValentine v. PPG Industries, Inc., 158 Ohio App.3d 615,2004-Ohio-4521, at ¶ 25. None of these factors are determinative.Coe v. Young (2001), 145 Ohio App.3d 499, 504. Rather, the inquiry is flexible, focusing on the underlying principles and methodologies and not on the resulting conclusions. Miller, at 611.
 {¶ 14} Hardy conducted tests that compared tool marks on the spent casings found in Tatum's house to tool marks on a live round police discovered in the car in which appellant was a passenger on the day of Tatum's murder. Tool marks are marks left on an item by a tool, in this case a firearm. Hardy explained that he first examined the spent casings to find marks or characteristics that would be unique to the weapon from which they were fired. Such characteristics are marks imparted on a round or casing that are unique to one weapon to the exclusion of all other weapons, such as magazine, extractor, and chambering marks. Hardy then examined the live round and found the same unique marks he detected on the spent casings. Therefore, he concluded that the live round and the spent casings were, at one time, chambered in the same weapon.
 {¶ 15} In defending the reliability of his methodology, Hardy explained that the characteristics a particular gun imparts on a bullet casing, be it a live round or a spent casing, are the same regardless of whether the gun is fired. Comparing tool marks on live rounds to those on spent casings is the same type of testing he normally performs when comparing spent casings. He simply looks for matching tool marks on the different objects. Hardy testified that these tests are scientifically valid and commonly accepted within the scientific community. The trial court allowed this testimony because the tests Hardy performed were essentially the same as those he normally performs in determining if two bullets were fired from the same gun. Given Hardy's explanation of his methodology, the trial court did not abuse its discretion by admitting his testimony, as his opinion was based on reliable, commonly accepted scientific principles. Cf. State v.Armstrong, Trumbull App. No. 2001-T-0120, 2004-Ohio-5635, at ¶66 (affirming admission of expert ballistics testimony). The jury was capable of assessing the weight of this testimony. Therefore, appellant's second assignment of error is overruled.
 {¶ 16} In his third assignment of error, appellant contends the trial court erred by admitting testimony describing statements he made before the murder. Specifically, Damien Sheppard testified that several months before the murder, he was smoking marijuana in a van with a number of people, including appellant. A man in the van stated that he would not be able to rob one "of his dudes." Sheppard testified that appellant responded by saying "I don't give a F. I would rob one of my niggers." The man repeated that he could not do that, and appellant again stated that "I don't care, I got to get mine. I will rob one of my niggers." At trial, appellant's counsel objected to the statements based on Evid.R. 404(A). The trial court overruled appellant's objection and admitted the testimony.
 {¶ 17} Appellant now contends that the admission of this testimony violated Evid.R. 403(A) because the probative value of the statements was substantially outweighed by the danger of unfair prejudice. Because appellant's trial counsel did not object to the statements on these grounds, he has waived any error based upon Evid.R. 403(A) absent plain error. See State v.Tibbetts (2001), 92 Ohio St.3d 146, 160-161. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." Statev. Moreland (1990), 50 Ohio St.3d 58, 62; State v. Waddell
(1996), 75 Ohio St.3d 163; State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
 {¶ 18} Given the evidence presented during the trial, we cannot conclude that the outcome would have been different if Sheppard's testimony about appellant's statements had been excluded. We note that Smith's testimony: (1) placed appellant inside the victim's house when shots were fired; (2) described incriminating statements appellant made upon getting back in the car; and (3) described a chain and watch that fell out of appellant's pocket which matched a description of jewelry that was missing from the victim. If the jury believed Smith's testimony, which it apparently did, it is extremely unlikely that the exclusion of this portion of Sheppard's testimony would have changed the outcome.
 {¶ 19} Even if appellant had not waived this objection, we fail to find error in the trial court's admission of Sheppard's testimony regarding appellant's statements. A trial court has broad discretion in the admission or exclusion of evidence, and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v. Lowe (1994),69 Ohio St.3d 527, 532. An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Reiner
(2000), 89 Ohio St.3d 342, 356.
 {¶ 20} Appellant contends that Sheppard's testimony concerning his own statements was unfairly prejudicial. We disagree. Only in rare cases are an accused's own actions or language unfairly prejudicial. State v. Bailey, Franklin App. No. 04AP-553, 2005-Ohio-4068, at ¶ 11, citing State v. Fuller,
Butler App. No. CA2000-11-217, 2002-Ohio-4110, at ¶ 13. This case is not the rare case where an accused's own language was unfairly prejudicial. Although the statements were unfavorable, there is a distinction between unfavorable and unfairly prejudicial. Id.;State v. Doyle (Mar. 28, 1997), Clark App. No. 96-CA-0038 (prejudicial evidence, in the sense that it helped to establish guilt, not unfairly prejudicial under Evid.R. 403[A]). The statements were not misleading or confusing and they arguably showed appellant's willingness to rob someone. Therefore, even if appellant had objected pursuant to Evid.R. 403(A), the trial court would not have abused its discretion by admitting this testimony. Appellant's third assignment of error is overruled.
 {¶ 21} In his first assignment of error, appellant contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each.
 {¶ 22} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
Id., at paragraph two of the syllabus.
 {¶ 23} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas
(1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks,
at 273.
 {¶ 24} Appellant first claims that the evidence was insufficient to convict him of aggravated robbery. We disagree. R.C. 2911.01 defines aggravated robbery as follows:
(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
(3) Inflict, or attempt to inflict, serious physical harm on another.
 {¶ 25} A theft offense is an essential element of the crime of aggravated robbery. "Theft offense" is defined in R.C.2913.01(K) as including, relevant to the instant case, the crime of theft, which is defined in R.C. 2913.02 as follows:
(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
(1) Without the consent of the owner or person authorized to give consent;
(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
 {¶ 26} Grimes testified that she left Tatum alone in his house. Appellant then walked into the house. Smith heard gunshots while appellant was in Tatum's house, and Tatum was later found shot to death. The house was in disarray. Tatum's cousin, Damien Sheppard, testified that Tatum normally wore a chain with a cross on it and a watch that was not on his body or in the house after he was murdered. Sheppard drew a picture of that jewelry for the jury. Smith testified that Tatum had a chain with a cross on it and a watch in his possession after Smith heard gunshots and saw appellant leave Tatum's house. Smith also drew a picture of the jewelry. The drawings and descriptions of those pieces of jewelry were strikingly similar. This testimony is sufficient, viewed in a light most favorable to the state, for a reasonable jury to find appellant committed a theft offense by obtaining Tatum's jewelry without his consent.
 {¶ 27} The evidence was also sufficient for a reasonable jury to further find that appellant possessed and used a deadly weapon during the commission of the theft offense. Smith testified that he heard four or five gunshots while appellant was in the house. Appellant then came out of the house with the jewelry. This is sufficient evidence to indicate appellant possessed and used a deadly weapon in the commission of a theft offense.
 {¶ 28} Appellant also claims that the evidence was insufficient to find him guilty of aggravated murder. Again, we disagree. In order to find appellant guilty of aggravated murder, the state had to prove beyond a reasonable doubt that appellant purposely caused Tatum's death while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit aggravated robbery. R.C. 2903.01(B). We have already found the evidence sufficient for a reasonable jury to find appellant guilty of aggravated robbery. Appellant claims that the state did not prove that he was the only person in the house when Tatum was shot or that Tatum's death occurred while he was in the house. Appellant also claims that the state failed to prove he intentionally shot Tatum.
 {¶ 29} Again, Grimes testified that when she left Tatum in the house, he was alone. As she left, she saw appellant walking up to the front door. Appellant was alone. Neither Tanner nor Smith testified that any other person went into the house while appellant was inside. Sheppard testified that the back door of the victim's house was locked and that no one could go in or go out through the back door. Smith testified that he heard four to five gunshots while appellant was in Tatum's house and then saw appellant come out of the house. After appellant got back into the car, Smith testified that appellant told him that he (appellant) had to "whack the dude" because he was running. Smith also saw that appellant had a chain with a cross on it and a watch in his possession which matched a description of the victim's jewelry later given by Sheppard. This testimony is sufficient, viewed in a light most favorable to the state, to demonstrate that appellant intentionally shot Tatum while committing or fleeing after the commission of an aggravated robbery.
 {¶ 30} Appellant next challenges the manifest weight of the evidence. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 31} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams,
Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 32} Appellant first claims that his convictions were against the manifest weight of the evidence because no evidence demonstrated that he stole any jewelry from the house. We disagree. Damien Sheppard, Tatum's cousin and roommate, testified that Tatum's chain and watch were not on Tatum or in the house after the murder. He stated that Tatum normally wore these items. He described these items and drew a picture of them for the jury. Smith also described the jewelry he saw in appellant's possession after appellant exited Tatum's house. The two descriptions were very similar to each other. Sheppard also testified that the victim's house had been ransacked. The jury clearly did not lose its way when it convicted appellant of aggravated robbery.
 {¶ 33} Appellant also claims that there was no credible evidence to prove that he was the person who shot Tatum. Again, we disagree. Smith testified that he heard four or five gunshots while appellant was in the house. Grimes testified that Tatum was alone when she left the house. There was no evidence that anyone else went into the house after appellant. According to Smith, after appellant came out of the house, appellant told Smith that he had to "whack the dude" because he was running. The jury obviously found Smith's testimony credible. The determination of weight and credibility of the evidence is for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We give great deference to that determination and none of the arguments advanced by appellant render Smith's testimony so unreliable as to be not credible as a matter of law. SeeState v. Timmons, Franklin App. No. 04AP-840, 2005-Ohio-3991, at ¶ 12. Accordingly, we cannot say that the jury clearly lost its way when it convicted appellant of aggravated murder.
 {¶ 34} Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 {¶ 35} Having overruled appellant's three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.