[Cite as *State v. Wendel*, 2016-Ohio-7915.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  14-16-08

      v.

MATTHEW T. WENDEL, SR.,           O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 14-CR-0177

Judgment Affirmed

Date of Decision:   November 28, 2016

APPEARANCES:

    *Elisabeth M. Mosser* **for Appellant**

    *David W. Phillips* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Matthew T. Wendel, Sr. ("Wendel"), appeals the March 23, 2016 judgment entry of sentence of the Union County Court of Common Pleas following his convictions for three counts of rape and one count each of gross sexual imposition, endangering children, and intimidation of an attorney, victim, or witness in a criminal case. For the reasons that follow, we affirm.

{¶2} This case stems from allegations that Wendel sexually and physically abused a boy, A.C., in 2009, when A.C. was three years old. A.C. did not reveal the alleged abuse until August 2014. On October 3, 2014, the Union County Grand Jury indicted Wendel on: Counts One, Two, and Three of rape in violation of R.C. 2907.02(A)(1)(b) and 2907.02(B), first-degree felonies; Count Four of gross sexual imposition in violation of R.C. 2907.05(A)(4) and 2907.05(C)(2), a third-degree felony; Count Five of endangering children in violation of R.C. 2919.22(B)(2), a third-degree felony; and Count Six of intimidation of an attorney, victim, or witness in a criminal case in violation of R.C. 2921.04(B) and 2921.04(D), a third-degree felony. (Doc. No. 1). On December 9, 2014, Wendel entered pleas of not guilty to the counts of the indictment. (Doc. No. 8).

{¶3} The case proceeded to a jury trial on March 21, 22, and 23, 2016. (Mar. 21, 2016 Tr. at 5); (Mar. 22, 2016 Tr. at 5); (Mar. 23, 2016 Tr. at 3). (*See* Doc. No. 89). The jury returned its verdicts on March 23, 2016, finding Wendel guilty of all

of the counts of the indictment. (Mar. 23, 2016 Tr. at 3-7). (*See also* Doc. Nos. 83, 84, 85, 86, 87, 88). The trial court sentenced Wendel on March 23, 2016 and filed its judgment entry of sentence that day. (Sentencing Tr. at 13-22); (Doc. No. 66).

{¶4} On April 12, 2016, Wendel filed a notice of appeal. (Doc. No. 99). He raises four assignments of error for our review.

### Assignment of Error No. I

**The trial court abused its discretion by admitting hearsay statements as "outcry" contrary to any hearsay exception; any probative value of statements was substantially outweighed by unfair prejudice, and statements were a needless presentation of cumulative evidence.**

{¶5} In his first assignment of error, Wendel argues that the trial court abused its discretion by admitting testimony of A.C.'s mother, Rebecca, and brother, Austin, as to statements made to them by A.C. Wendel argues that the trial court abused its discretion by admitting this evidence for four reasons: (1) the hearsay testimony was not subject to the excited-utterance exception under Evid.R. 803(2); (2) the hearsay testimony was not subject to the exception for child statements in abuse cases under Evid.R. 807; (3) the hearsay testimony was of little probative value and unfairly prejudicial to Wendel under Evid.R. 403(A); and (4) the hearsay testimony was needlessly cumulative contrary to Evid.R. 403(B).

{¶6} Wendel does not specify precisely what testimony he believes the trial court abused its discretion in admitting. However, he appears to be referring to

portions of Rebecca's testimony during the following exchange, when she was describing A.C.'s statements to her after she requested that the television channel be changed from a program depicting homosexual activity:

[Rebecca]: I kept requesting for the channel to be changed and he kept asking me why. And I said, God does not approve of that, so we need to remove that off of the television. And he kept saying but why. And I said, because we do not watch homosexual activity on the television. And he said, never? And I said, never. And then I said, back up. Some people do these things but that doesn't make it okay in God's eyes. And he said, well, something like that happened to me.

[Defense Counsel]: Your Honor, I'm going to object to what he said as far as it being hearsay. * * * She's indicating she's going to testify as to what one of the other son's actually told her which is clearly hearsay.

[State's Counsel]: Well, Your Honor, that fact it's an outcry, it's not admitted for the truth of the matter but it, also, shows what she did. She referred the child back

-4-

to the doctor after that. And it is absolutely relevant. It's an outcry from the child, so –

[Trial Court]:    Overruled.

* * *

[State's Counsel]:    All right, ma'am, now we were talking about what you had said to him about the television. You objected to that. You said it was against God and your son's reaction was to talk to you and he told you what?

[Rebecca]:    He said, well, something like that happened to me, mommy.

[State's Counsel]:    All right, and at that time, did you ask him what happened?

[Rebecca]:    Yes, I asked Austin to please turn the television off completely and I asked [A.C.] to come closer to me and I set him on my lap and I very calmly said, well, what do you mean, [A.C.]? And he said, well, [Wendel] did something like that to me.

* * *

[State's Counsel]: So, he said [Wendel] did something to you [sic]. Did he tell you what happened?

[Rebecca]: Yes, I asked him, what do you mean? What happened? And he said he smacked his pecker on mine.

[State's Counsel]: And what was your reaction?

[Rebecca]: I very calmly looked at him and said, what do you mean, he smacked his pecker on yours? I said, where did this happen? And he said, in the old house and he made me take a shower with him and he was smacking his pecker on mine and twisting his nipples and he had a real funny grin on his face. He was laughing at me, mommy.

* * *

[State's Counsel]: As a result of that, what did you do?

[Rebecca]: I asked him more questions. I said, where was mommy? And he said, you were at work. And he would slowly continue to tell me more things and I had made an appointment to bring him to a counselor that he trusts because I knew, if I

> brought him directly to law enforcement, he would clam up and go mute.
>
> [State's Counsel]: All right. Well, you went to a counselor then?
>
> [Rebecca]: Uh-huh.

(Mar. 21, 2016 Tr. at 141-145).

{¶7} As to Austin, Wendel appears to dispute the portions of the following exchange in which Austin describes things A.C. said to him after Rebecca requested that the television channel be changed:

> [Austin]: He appeared to have a kind of strange look on his face and my mom kind of questioned after that point why he looked like that.
>
> [State's Counsel]: Okay. And what – did you hear what [A.C.] had to say?
>
> [Austin]: Yes, I did.
>
> [State's Counsel]: All right. And just, generally, without specifics, just generally, what did [A.C.] have to say at that time?
>
> [Austin]: He just said, oh, something like that happened to me before. Something along the lines of that.
>
> [State's Counsel]: Did he say who did it?

[Austin]: Yes.

[State's Counsel]: Okay. Now, at that period of time, did you hear what your brother had to say about what had happened to him?

[Austin]: Yes, I did.

[State's Counsel]: And, specifically, did he talk about something in relation to peeing?

[Austin]: Yes.

[State's Counsel]: What did he say?

[Austin]: He said that he had been peed on.

[State's Counsel]: All right. And, ultimately, did you determine or did you talk to [A.C.] about that?

[Austin]: Yes.

* * *

[State's Counsel]: At this time, your brother's eight years old. Is that right?

[Austin]: I believe so, yes.

[State's Counsel]: Did he understand the concept of ejaculating?

[Austin]: No, he did not.

[State's Counsel]: All right. And so, did you discuss this with him?

[Austin]:              Yes.

[State's Counsel]:     And did you discuss the – when he talked about

                       being peed on, did you discuss what color it was?

                       What happened?  Things like that?

[Austin]:              I had asked him what color it was.

[State's Counsel]:     And what did he tell you?

[Austin]:              He said, it was white and goobie [sic].

[State's Counsel]:     And, sir, since that time, have you really had

                       many discussions with your brother about what

                       happened to him?

[Austin]:              Just very few.

[State's Counsel]:     Does he like to talk about it?

[Austin]:              No, he doesn't.

(*Id.* at 185-187).

{¶8} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).  An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).  However, "if the party wishing to exclude

evidence fails to contemporaneously object at trial when the evidence is presented, that party waives for appeal all but plain error." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 53-54, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 59-60, *State v. Barrett*, 4th Dist. Scioto No. 03CA2889, 2004-Ohio-2064, ¶ 20, and *State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶ 19.

{¶9} "Crim.R. 52(B) governs plain-error review in criminal cases." *Bagley* at ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.*, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).

{¶10} We begin our analysis by addressing the supposed hearsay statements to which Rebecca testified. We will assume without deciding that an abuse-of-discretion standard of review applies as to Rebecca's testimony, even though Wendel objected to only one of the statements. We hold that the trial court did not abuse its discretion in admitting the out-of-court statements to which Rebecca testified because they are not hearsay. Hearsay is defined as "a statement, other

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802. "An out-of-court statement offered for reasons other than the truth are not hearsay." *State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, ¶ 34, citing *State v. Lewis*, 22 Ohio St.2d 125, 132-133 (1970). "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980).

{¶11} In this case, read in context, the out-of-court statements of A.C. to which Rebecca testified were not offered for their truth. Rather, they were offered to show why Rebecca took the course of action she did after A.C. told her that Wendel had abused him. *See State v. Hoseclaw*, 3d Dist. Allen No. 1-12-31, 2013-Ohio-3486, ¶ 48 ("The trial court did not abuse its discretion by allowing the witness to testify concerning the victim's statement that she was raped since it was offered not for its truth but to show why the witness reported the rape to the victim's mother, which the mother, then, reported to law enforcement."), citing *Thomas* at 232. Indeed, Rebecca's testimony concerning A.C.'s out-of-court statements were limited to those statements he made at the moment Rebecca first learned of the abuse when she asked that the television channel be changed. Immediately after Rebecca

recited A.C.'s out-of-court statements, counsel for the State asked Rebecca what she did as a result of A.C.'s disclosures, and she testified that she "asked him more questions" and that she made an appointment to take A.C. to a counselor he trusts because she knew he would "clam up" if taken directly to law enforcement. Therefore, because this testimony by Rebecca was not hearsay, we hold that the trial court did not err in admitting it. *See Hoseclaw* at ¶ 48. In light of our conclusion, we need not address Wendel's arguments that the out-of-court statements to which Rebecca testified do not satisfy the hearsay exceptions found in Evid.R. 803(2) and 807.

{¶12} As to the out-of-court statements to which Austin testified, we note that Wendel did not object to them. Therefore, we apply a plain-error standard of review. We hold the trial court did not commit plain error in allowing Austin's testimony concerning A.C.'s out-of-court statements. Even assuming the statements are hearsay not subject to an exception, Wendel has not shown in this appeal that the record is clear that he would not have been convicted in the absence of the improperly admitted testimony. That is, any improperly admitted hearsay statements admitted during Austin's testimony are cumulative to properly admitted evidence. "Any error in the admission of hearsay is generally harmless when the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature." *State v. Geboy*, 145 Ohio App.3d 706, 721 (3d

Dist.2001). *See also State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 72.

**{¶13}** As Wendel acknowledges in his brief, Austin's testimony is cumulative to testimony A.C. gave in his trial deposition. A.C. testified that Wendel "peed on me, in my butt, and he peed white stuff in my mouth." (Mar. 22, 2016 Tr. at 8, State's Ex. 30). A.C. was cross-examined by Wendel's counsel on the same matters. (*See id.*). For these reasons, any admission of hearsay statements to which Austin testified was at worst harmless error; therefore, it was not plain error for the trial court to admit the testimony. *See State v. Franklin*, 9th Dist. Wayne No. 14AP0055, 2016-Ohio-56, ¶ 24 ("Because Mother's testimony was cumulative of [the child victim's] in-court testimony, any resulting error was harmless and, therefore, the trial court did not commit plain error."), citing *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 50. As with Rebecca's testimony, in light of our conclusion that Wendel has not demonstrated plain error as to the admission of Austin's testimony, we need not address Wendel's arguments that the out-of-court statements to which Austin testified do not satisfy the hearsay exceptions found in Evid.R. 803(2) and 807.

**{¶14}** We reject the other arguments Wendel makes under this assignment of error. He argues that the trial court erred by admitting Rebecca's and Austin's testimony concerning the purported hearsay statements because those statements are

of little probative value and unfairly prejudicial to Wendel under Evid.R. 403(A). Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.'" *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 122, quoting *State v. Calhoun*, 11th Dist. Ashtabula No. 2010-A-0057, 2012-Ohio-1128, ¶ 82. Because Wendel's trial counsel did not object to Rebecca's and Austin's testimony on Evid.R. 403(A) grounds, Wendel waived any error based on Evid.R. 403(A) absent plain error. *See State v. Johnson*, 10th Dist. Franklin No. 05AP-12, 2006-Ohio-209, ¶ 17, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 160-161 (2001).

{¶15} Rebecca's and Austin's testimony concerning A.C.'s out-of-court statements was not unfairly prejudicial to Wendel. As we noted above, A.C. testified concerning these statements and was subject to cross-examination. Therefore, Wendel was not unfairly prejudiced by the admission of Rebecca's and Austin's testimony. *State v. McGovern*, 6th Dist. Erie No. E-08-066, 2010-Ohio-1361, ¶ 38 ("We also find that the probative value of [the intake investigator's] testimony is not substantially outweighed by the danger of unfair prejudice, particularly because the victim took the stand, identified appellant as the perpetrator, and was subjected to cross-examination."); *State v. Fox*, 5th Dist. Licking No.

2009CA00085, 2010-Ohio-338, ¶ 23-25 (finding that hearsay evidence was not unfairly prejudicial to the appellant because "[e]vidence regarding appellant's propensity for violence was already in the record via his prior domestic violence conviction").

{¶16} Moreover, in A.C.'s testimony, he provided many details of the abuse not found in Rebecca's and Austin's testimony. (*See* Mar. 22, 2016 Tr. at 8, State's Ex. 30). The jury was free to believe or disbelieve A.C.'s detailed testimony. *See State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 98. Therefore, Wendel has not and cannot demonstrate that he would not have been convicted in the absence of Rebecca's and Austin's testimony. *See Heft*, 2009-Ohio-5908, at ¶ 72 (concluding that, where the child victim testified and was subject to cross-examination concerning statements she made to her friend and her friend's mother, admission of the friend's testimony concerning the child victim's out-of-court statements "was harmless" and that there was not "a reasonable probability that the outcome of trial would have been otherwise" but for their admission). Therefore, Wendel cannot demonstrate that the trial court committed plain error by not excluding Rebecca's and Austin's testimony under Evid.R. 403(A). *See State v. Cody*, 8th Dist. Cuyahoga No. 100797, 2015-Ohio-2261, ¶ 36. For these reasons, we reject Wendel's Evid.R. 403(A) argument.

**{¶17}** Finally, Wendel argues under this assignment of error that Rebecca's and Austin's testimony is needlessly cumulative under Evid.R. 403(B) to A.C.'s testimony. Evid.R. 403(B) provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." "Evid.R. 403(B) does not require exclusion of cumulative evidence. The court has discretion to admit or exclude it." *State v. Campbell*, 69 Ohio St.3d 38, 51 (1994). In this case, Wendel did not object at trial to the purportedly cumulative nature of Rebecca's and Austin's testimony. Therefore, he waived all but plain error concerning this issue. *See State v. Dixon*, 152 Ohio App.3d 760, 2003-Ohio-2550, ¶ 21 (3d Dist.).

**{¶18}** The trial court did not commit plain error by not excluding Rebecca's and Austin's testimony as needlessly cumulative. As we discussed above, Rebecca's testimony concerning A.C.'s statements to her were offered to show why she took the course of action she did. Therefore, Rebecca's testimony was not needlessly cumulative. *See State v. Teitelbaum*, 10th Dist. Franklin No. 14AP-310, 2016-Ohio-3524, 2016-Ohio-3524, ¶ 90. As to Austin's testimony, although it may have been cumulative to A.C.'s testimony, Wendel has not shown how he was prejudiced by the statement, particularly because—as we discussed above—A.C. testified, offered details beyond those found in Austin's testimony, and was subject to cross-examination. Moreover, for the reasons we discussed above, Wendel has

not and cannot demonstrate that he would not have been convicted in the absence of what he argues was needlessly cumulative evidence. *See Heft* at ¶ 72. Therefore, Wendel has not demonstrated that the trial court committed plain error by not excluding this testimony that Wendel argues was needlessly cumulative. *See Cody* at ¶ 36.

{¶19} For the reasons above, we overrule Wendel's first assignment of error.

### Assignment of Error No. II

**The trial court abused its discretion by admitting testimony from a former victim contrary to Evid.R. 404(B) where statements failed to show motive, plan, preparation, scheme, or plan, rather were used to show propensity of appellant to commit the crime, and were more prejudicial than probative.**

{¶20} In his second assignment of error, Wendel argues that the trial court abused its discretion by admitting testimony of D.H.—an alleged past child victim of Wendel—because, according to Wendel, the testimony amounted to impermissible evidence of a prior bad act under Evid.R. 404(B).

{¶21} "Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith." *State v. Hawthorne*, 7th Dist. Columbiana No. 04 CO 56, 2005-Ohio-6779, ¶ 24, citing *State v. Elliot*, 91 Ohio App.3d 763, 770 (3d Dist.1993) and Evid.R. 404. "Evidence of other crimes, wrongs, or acts" "may,

however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 16, quoting Evid.R. 404(B).

**{¶22}** In *State v. Williams*, the Supreme Court of Ohio set forth the three-step analysis trial courts should conduct in determining whether "other acts" evidence is admissible under Evid.R. 404(B). 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19-20. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. "The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

**{¶23}** Generally, "[a] trial court is given broad discretion in admitting and excluding evidence, including 'other bad acts' evidence." *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). However, because Wendel failed to object to D.H.'s

testimony, we review for plain error. *See Costell*, 2016-Ohio-3386, at ¶ 122. As we stated above, under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Smith*, 2015-Ohio-2977, at ¶ 63, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).

**{¶24}** D.H. testified that her mother was married to Wendel. (Mar. 22, 2016 Tr. at 75-76). According to D.H., when she was eight years old and living in the same house as Wendel, he raped her vaginally and anally. (*Id.* at 76-77). D.H. was 15 years old at the time of trial. (*Id.* at 75, 77). D.H. testified that, after raping her, Wendel would have D.H. go to the shower. (*Id.* at 77). According to D.H., Wendel told her that he would kill her. (*Id.*). When she was still eight years old, D.H. told her mom that Wendel threatened to kill her. (*Id.*). Immediately following D.H.'s testimony, the trial court instructed the jury that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but that it may "be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." (*Id.* at 78).

**{¶25}** A.C. testified in his trial deposition that he is nine years old now. (Mar. 22, 2016 Tr. at 8, State's Ex. 30). He testified that he used to live in a different house, and he lived there with his mother, his big brother, his little brother, and

Wendel. (*Id.*). A.C. was three at that time. (*Id.*). According to A.C., while he lived in that house with Wendel and the others, Wendel raped and abused him. (*Id.*). A.C. described that, when his mother was at work and his big brother was at school, Wendel was at the house watching him. (*Id.*). A.C. testified that he and Wendel would take baths together. (*Id.*). According to A.C., in the bathtub, Wendel would force his penis inside A.C.'s mouth. (*Id.*). A.C. also testified that Wendel raped him anally. (*Id.*). According to A.C., Wendel held a knife to A.C.'s throat and said that if A.C. told anyone, he would kill him. (*Id.*).

{¶26} Turning to the first step of the *Williams* analysis, we conclude that D.H.'s testimony is relevant to making it more probable that Wendel committed the offenses against A.C. *See State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, ¶ 95. The circumstances described by D.H. are similar to those of A.C., and they show a similar plan or method of conduct with both victims. D.H.'s and A.C.'s mothers were in relationships with Wendel at the time he allegedly raped D.H. and A.C. As in the case of A.C., D.H. resided with Wendel at the time D.H. said he raped her. The incidents with both children involved a bath or shower. According to D.H., Wendel made D.H., who was eight years old at the time, shower after he raped her. And according to A.C., who was three years old at the time, Wendel raped him in the bath. Finally, both D.H. and A.C. testified that Wendel threatened to kill them if they told anyone. The circumstances described by D.H.

and A.C. are sufficiently similar to make D.H.'s testimony relevant to whether Wendel committed the offenses against A.C. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 22; *Meeks* at ¶ 95; *State v. Herrington*, 8th Dist. Cuyahoga No. 101322, 2015-Ohio-1820, ¶ 33. "[I]f believed by the jury, such testimony could corroborate the testimony of [A.C.]" *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 22.

**{¶27}** Concerning the second step of the *Williams* analysis, as we stated above, the circumstances described by D.H. and A.C. reflect a similar opportunity, plan, or method of conduct to take advantage of the children of the women with whom Wendel had relationships. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 21; *Meeks* at ¶ 95; *Herrington* at ¶ 33. These are the reasons for which the State offered D.H.'s testimony at trial. In fact, the trial court gave two limiting instructions that this evidence was *not* being offered to prove Wendel's character— one immediately following the testimony of D.H., and one prior to deliberation. (Mar. 22, 2016 Tr. at 78, 164). *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 23. "We presume the jury followed those instructions." *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 23.

**{¶28}** The third and final step of the *Williams* analysis involves a consideration of whether the probative value of the other-acts evidence provided in D.H.'s testimony is substantially outweighed by the danger of unfair prejudice. This

evidence is not unduly prejudicial "because the trial court instructed the jury that this evidence could not be considered to show that [Wendel] had acted in conformity with a character trait." *Id.* at ¶ 24. These instructions lessened any prejudicial effect of D.H.'s testimony, and D.H. corroborated A.C.'s testimony about the sexual abuse, which Wendel denied. *Id.* Moreover, D.H.'s testimony spans fewer than three pages of the trial transcript, and the details given by D.H. in her testimony were limited to only those details necessary to show a similar opportunity, plan, or method of conduct. *See State v. Powers*, 12th Dist. Clinton No. CA2006-01-002, 2006-Ohio-6547, ¶ 13. For these reasons, any prejudicial effect did not substantially outweigh the probative value of that evidence. *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 24.

{¶29} We hold that the trial court did not err by admitting the Evid.R. 404(B) evidence in this case. Accordingly, Wendel cannot satisfy the plain-error standard. Wendel's second assignment of error is overruled.

### Assignment of Error No. III

**The trial court abused its discretion by examining a witness, (proffered by appellee but never qualified as an expert,) while lacking partiality as required by Evid.R. 614(B), and after eliciting a change in the testimony, then used the changed testimony as the sole basis for admitting a deposition of the alleged child victim under R.C. 2945.481(B)(1)(b).**

{¶30} In his third assignment of error, Wendel argues that the trial court, when questioning a witness at a hearing concerning the admissibility at trial of

-22-

A.C.'s deposition under R.C. 2945.481,[1] violated Evid.R. 614(B) by questioning the witness in an impartial manner.[2]

**{¶31}** "A trial judge is permitted to interrogate witnesses in an impartial manner." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 229, citing Evid.R. 614(B). "'Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain a material fact or develop the truth.'" *State v. Inskeep*, 3d Dist. Union No. 14-2000-13, 2000 WL 1151065, *2 (Aug. 15, 2000), quoting *State v. Blankenship*, 102 Ohio App.3d 534, 548 (12th Dist.1995). "'A trial court's interrogation of a witness is not deemed partial for purposes of Evid. R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant.'" *Id.*, quoting *Blankenship* at 548.

**{¶32}** Our review of the transcript of the hearing concerning the admissibility at trial of A.C's deposition testimony does not reflect that the trial court ran afoul of Evid.R. 614(B). The trial court questioned Dr. Malcolm Stokes ("Dr. Stokes"), a family therapist and social worker who treated A.C. since 2012.

---

[1] R.C. 2945.481 "establishes the procedures and requirements for the deposition of a child victim of specific crimes as well as special arrangements for the testimony of a child victim who is less than 13 in specific crimes * * *." *State v. Collins*, 7th Dist. Columbiana No. 10 CO 10, 2011-Ohio-6365, ¶ 48.

[2] We note that Wendel's counsel did not object to the admissibility at trial of A.C.'s deposition testimony. In fact, Wendel's counsel stated, "No objection. I think we actually stipulated we agreed before the trial even started on that." (Mar. 22, 2016 Tr. at 117). For purposes of our analysis, we assume without deciding that Wendel did not waive arguments related to the admissibility of A.C.'s deposition testimony.

(Mar. 18, 2016 Tr. at 9-10). The transcript reveals that the trial court was merely attempting to "develop the truth" and ascertain whether Dr. Stokes's opinion—that A.C. would suffer serious emotional trauma as a result of testifying in the courtroom in front of Wendel—was made to a reasonable degree of scientific certainty.

**{¶33}** On direct examination, counsel for the State asked whether Dr. Stokes's opinions were made to a reasonable degree of scientific or medical certainty, and later developed Dr. Stokes's opinion concerning the level of trauma A.C. would suffer by testifying in the courtroom:

> [State's Counsel]: And, Doctor, just so we're clear, any opinions that you express today, are they within a reasonable degree of scientific or medical certainty?
>
> [Dr. Stokes]: I feel so. Uh-huh.
>
> * * *
>
> [State's Counsel]: All right. Sir, if you would, please, do you have an opinion, based on your training and experience, again, to a reasonable degree of scientific certainty, whether or not testimony, in this courtroom facing with the defendant seated where he's seated there at the defense table,

-24-

would result in serious emotional trauma to the child if he were forced to come into the courtroom – this courtroom and testify where you are right now?

[Dr. Stokes]: Yes. It's my professional opinion that if he had to eyeball the alleged perpetrator, that it would bring back a flood of emotions specifically attached to the abuse. And he would probably – he might even became [sic] mute again. That would be the worst scenario.

[State's Counsel]: All right. Would he then suffer serious emotional trauma as a result of that experience?

[Dr. Stokes]: Yes. I feel he would.

(*Id.* at 12-14). On cross-examination, Wendel's counsel inquired as to Dr. Stokes's opinion, and the trial court sought to clarify the degree of certainty of his opinion:

[Defense Counsel]: And my question to you then, Dr. Stokes, as I understand it, your testimony is in your opinion, [A.C.] would suffer serious emotional trauma if he were forced to testify, correct?

Case No. 14-16-08

[Dr. Stokes]:      Yes. That would be very possible. That's my professional opinion.

[Trial Court]:      You can't testify that it's possible. Your opinion has to be whether or not, based – here's the question before the Court that the Court has to determine. Whether or not, based upon a reasonable degree of scientific certainty, it's more probable than not that he would – that the child by testifying in the courtroom, as opposed to the deposition where he testified today, would experience serious emotional trauma. That has – that's what I want to focus on. And I want you to testify to whether or not you have an opinion, number one. And the answer to that question that you've already basically said, yes, I have an opinion. But whether or not, based upon your opinion, what I just said. Is that your opinion or not your opinion? It's not a possibility, it's a probability.

[Dr. Stokes]:      Right. It is.

-26-

[Trial Court]:        More probable than not is the standard.

[Dr. Stokes]:        It's highly probable that he would suffer severe consequences if he had to testify.

[Defense Counsel]: In your opinion?

[Dr. Stokes]:        Yes.

[Defense Counsel]: That's all I have, your Honor.

[Trial Court]:        And is your opinion based upon a reasonable degree of scientific certainty?

[Dr. Stokes]:        Yes, your Honor.

[Trial Court]:        And is your testimony that it would be highly probable, meaning that's [sic] it's more probable than not in your opinion?

[Dr. Stokes]:        Yes, your Honor.

(*Id.* at 18-20).

**{¶34}** This excerpt from the transcript reveals that the trial court's questioning of Dr. Stokes was limited and designed to clarify a single issue—namely, whether Dr. Stokes's opinion was to a reasonable degree of scientific certainty. *See Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, at ¶ 229 ("The trial judge's questioning of the four witnesses during the motion hearing was limited and designed to clarify a single issue, namely, their perception of [the victim's]

-27-

emotional state."). The trial court's questioning was particularly understandable given that Dr. Stokes testified on direct examination that in his opinion to a reasonable degree of scientific certainty, A.C. would suffer serious emotional trauma by testifying in the courtroom. The trial court sought to clarify whether Dr. Stokes's testimony changed on cross-examination. We reject Wendel's assertion that the trial court "elicit[ed] a change" in Dr. Stokes's testimony or "caus[ed] the witness to change his testimony." (Appellant's Brief at 16, 18). Indeed, Wendel's counsel did not object to the trial court's questioning of Dr. Stokes. We conclude that the trial court did not violate Evid.R. 614(B) by seeking the clarification it did.

{¶35} Wendel's argument that the trial court improperly admitted at trial A.C.'s deposition testimony is based solely on his argument that the trial court exceeded the scope of Evid.R. 614(B) in questioning Dr. Stokes. Because we rejected Wendel's argument that the trial court did not comply with Evid.R. 614(B), we likewise reject his argument that the trial court erred by admitting A.C.'s deposition testimony under R.C. 2945.481.

{¶36} Wendel's third assignment of error is overruled.

## Assignment of Error No. IV

**The conviction of appellant is against the manifest weight of the evidence.**

{¶37} In his fourth assignment of error, Wendel argues that his "conviction" is against the manifest weight of the evidence. In support of this assignment of

error, Wendel offers a single, three-sentence paragraph, and he does not specify to which "conviction" he is referring. "'[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal.'" *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 86, quoting *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. If an argument exists that can support an assignment of error, it is not this court's duty to root it out. *State v. Shanklin*, 3d Dist. Union No. 14-13-23, 2014-Ohio-5624, ¶ 31, citing *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 (9th Dist.).

**{¶38}** "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Id.*, quoting App.R. 16(A)(7).

**{¶39}** Here, Wendel argues in his brief that the State "has not shown that Appellant committed the elements of *the crime* herein and his conviction is against

the manifest weight of the evidence." (Emphasis added.) (Appellant's Brief at 19). Wendel fails to specify to which "crime" he is referring, or the elements of that offense. It is not this court's duty to create an argument for an appellant, and we will not do so in this case. *See Shanklin* at ¶ 31; *State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 83.

{**¶40**} Wendel's fourth assignment of error is overruled.

{**¶41**} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jlr**